UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:20-CR-91 JD |
| BRYANT RIOS | |

**OPINION AND ORDER**

Defendant Bryant Rios has been found guilty on his plea of guilty for possessing a firearm as a felon, in violation of 18 U.S.C. § 922 (g)(1). [DE 1, 54]. A Presentence Investigation Report ("PSR") was completed, to which Mr. Rios filed several objections. The Court accepted evidence and arguments on the objections from the parties. The Court now resolves the objections.

### A. Offense Conduct

Mr. Rios objects to the inferences in paragraph 9 of the PSR that he was inside the home when police arrived because he maintains he was outside the residence. The government's response to Mr. Rios' objection clarifies paragraph 9 by noting that the police first encountered Mr. Rios "standing on the sidewalk directly in front of his residence, 1140 E. Madison, matching the robbery suspect description" given to police. [DE 67 at 1]. "Therefore, while the defendant was not inside the residence, per se, at the time of apprehension, the defendant certainly was at the residence." *Id.* At the bifurcated hearing, Mr. Rios indicated he has no objection to the government's clarification and the Court noted the revisions to paragraph 9 on the record. Accordingly, this objection has been resolved and the Court need not address it further as it does not impact the advisory Guidelines calculation or the factors under 18 U.S.C. §3553(a).

**B.  Number of Firearms**

Mr. Rios objects to the two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A) based on the number of firearms involved in the offense. Section 2K2.1(b)(1)(A) provides for a two-level increase in the defendant's base offense level if an offense involved three to seven firearms. Application Note 5 provides that the district court should "count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed . . ." When a court determines the number of firearms involved in an offense under § 2K2.1(b)(1), it must consider relevant conduct, and specifically how many firearms were possessed as "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see also United States v. Ghiassi*, 729 F.3d 690, 694 (7th Cir. 2013); *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998).

Possession "may be either actual or constructive and it need not be exclusive but may be joint … Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object." *United States v. Morris*, 349 F.3d 1009, 1014 (7th Cir. 2003) (quoting *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990). Actual and constructive possession may be proved by either direct or circumstantial evidence. *See id.* "Constructive possession is a legal fiction whereby an individual is deemed to "possess" contraband items even when he does not *actually* have immediate, physical control of the objects, i.e., the individual does not possess them in a literal sense." *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009) (internal quotations omitted). This enhancement includes all firearms that the Defendant unlawfully possessed in the course of his criminal conduct, not merely guns that were in his

possession at the time of his arrest. *See United States v. Barbour*, 191 F. App'x 471, 474 (7th Cir. 2006) (not error to count firearms possessed within 10 months of instant offense arrest as part of same course of conduct). It is the government's burden to prove by a preponderance of the evidence the number of firearms involved in an offense, and the sentencing court may consider relevant evidence regardless of whether such evidence is admissible under the Federal Rules of Evidence "so long as the information ... has a sufficient indicia of reliability to support its probable accuracy." *United States v. Birk*, 453 F.3d 893, 899 (7th Cir. 2006) (quoting *United States v. Edwards*, 115 F.3d 1322, 1326–27 (7th Cir. 1997)). To rebut the government's evidence, the Defendant must make more than a "bare denial" of the information in the presentence report to avoid the application of this enhancement. Rather, he must present evidence that questions the reliability or correctness of the facts contained therein. Only when the defendant creates "real doubt" does the burden shift to the government to demonstrate the accuracy of the information. *United States v. Black*, 636 F.3d 893 (7th Cir. 2011).

During the execution of the search warrant, the police recovered three firearms that were in a crawl space under the floor of one of the rooms of 1140 E. Madison. Braxton Rios was also located in the crawlspace at the same time. While Mr. Rios acknowledges that he told police the firearms were his, he did so "only because he was trying to protect his brothers, not because he actually possessed them." [DE 67 at 2]. He admits to only possessing one of the firearms in question. In the factual basis for his plea agreement, Mr. Rios admitted to telling investigators that all three of the firearms belonged to him. He also admits his DNA was recovered from the Taurus pistol. The government contends that Mr. Rios admitted to ownership when in his recorded interview to law enforcement, he said "I really just want you to let my brothers go … I'm going to say they was mine."

3

The police reports, admitted by agreement of the parties and documenting the interviews with Mr. Rios, his co-defendant Brandon Hairston, and the robbery victim, indicate that the night before the alleged robbery Mr. Rios' little brother Braxton and another individual (the brother of the robbery victim) conducted a firearms transaction at 1140 E. Madison. The original agreement was to exchange a green SCCY firearm for a purple Ruger and an additional $100. During this transaction, there was a dispute regarding the firearms, things became heated, and a "scuffle" occurred. Mr. Rios indicated in his interview with law enforcement that for safety purposes, he took the firearm (the SCCY) from the individual that had brought it to his house, who was then asked to leave. These two firearms (the Ruger and the SCCY) were included in those recovered from the crawlspace during the search warrant. At the bifurcated hearing, Mr. Rios conceded that he had possessed the SCCY the night before the alleged robbery at the attempted firearm exchange between his brother and another individual. Based on the hearing testimony and the police reports, during the firearm exchange, Mr. Rios' took away the SCCY from the other individual because he felt the situation was escalating, therefore, he actually possessed the SCCY. The question then remains whether Mr. Rios possessed the Ruger, the third firearm recovered.

Given the evidence connecting Mr. Rios to the house, although clearly, he did not have exclusive access, that all three firearms were found together hidden in the crawl space, the events the night before his arrest, and his acknowledgement that he actually possessed the other two firearms hidden with the Ruger, the Court finds that it is more likely than not that Mr. Rios also possessed the Ruger. As Mr. Rios notes, his fingerprints were only found on one firearm (the Taurus), which he pled to. However, the absence of fingerprints does not demonstrate absence of possession. He also concedes that he possessed the second firearm—the SCCY. While the house

4

is owned by his mother, Mr. Rios admitted he lives there along with others. It is unclear if Mr. Rios was present during the entirety of the firearm exchange, however, he was present long enough to witness an escalating situation and take the SCCY from the other individual. Given the anticipated exchange of firearms, it is more likely than not that the Ruger was present, and that Mr. Rios also took control over the Ruger to deescalate the situation.

During the bifurcated hearing, Officer Comeau testified that he did not believe Mr. Rios' admission that all three firearms were his. He believes Mr. Rios was simply trying to shield his brothers. While the Court agrees that Mr. Rios' admission is tentative, the Court does not rely on that admission. Officer Comeau also testified that Mr. Rios was aware of the firearms and knew where they were when they were recovered. But the basis for that testimony is not further explained. Further, Mr. Rios' bare denial of the possession of all three firearms now without more evidence that questions the reliability or correctness of the facts does not sufficiently rebut the inference that under these circumstances he either actually or constructively possessed, at one time or another, all three firearms recovered from his home.

For those reasons, the Court concludes that Mr. Rios possessed three firearms and therefore finds that the 2-level enhancement is appropriate.

### C. Prior "Crime of Violence"

Mr. Rios objects to his base offense level pursuant to U.S.S.G. § 2K2.1(a)(3) determined, in part, by his having sustained a crime of violence. The guideline for a violation of 18 U.S.C. § 922(g)(1) is U.S.S.G. § 2K2.1. Under § 2K2.1(a)(3), the base offense level is 22 if the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense. The Guidelines define

crime of violence, in part, as any offense under federal or state law, punishable by imprisonment for a term exceeding one year that has an element the use, attempted use, or threatened use of physical force against the person of another. U.S.S.G. § 4B1.2(a). Mr. Rios disputes that his Indiana conviction of criminal recklessness (PSR ¶¶ 58–59) constitutes a crime of violence. The government previously asserted that conviction is a crime of violence given the holding in *U.S. v. Clinton*, 591 F.3d 968 (7th Cir. 2010), as cited in the PSR. However, at the bifurcated hearing, the government conceded that *Clinton* no longer supports that result, and that the prior conviction does not qualify as a crime of violence. The Court agrees.

Accordingly, the Court sustains Mr. Rios' objection and finds his base offense level to be 20, pursuant to § 2K2.1(a)(4)(B)(i)(I). This base offense level is applicable because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine, which Mr. Rios does not dispute.

### D. Use of the Firearm in Another Felony Offense

Mr. Rios objects to the 4-level enhancement pursuant to U.S.S.G. 2K2.1(b)(6)(B) based on the allegation that he used the Taurus in committing the crime of felony robbery prior to his arrest as described in PSR paragraphs 8, 13, 14, 17-20, 28, 30. Under 2K2.1(b)(6)(B), the offense level is increased by 4 levels if the defendant used or possessed any firearm or ammunition in connection with another felony offense. Application Note 14(A) states that this enhancement applies if the firearm facilitated, or had the potential of facilitating, another felony offense. Application Note 14(C) defines "another felony offense" as "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." The government bears the burden of proving by a

preponderance of the evidence that the felonious conduct occurred. *United States v. Sandidge*, 784 F.3d 1055, 1062 (7th Cir. 2015).

On August 14, 2020, a woman made a 911 call stating she had been robbed at gun point in the area of 1100 East Madison by two individuals, one that was unknown to her and the other she identified as Brian Rios or Brian Hairston, who was later identified as the defendant, Bryant Rios. She indicated that one of the suspects was armed with a black semiautomatic pistol with an extended magazine and took her black iPhone 8. Mr. Rios denies this armed robbery occurred and asserts that the alleged victim made up the story to get back at him and his brother for an incident that occurred the night prior that involved the alleged victim's brother. No state charges were filed in connection with this alleged robbery. In his objection, Mr. Rios notes that during discovery, the detectives investigating the matter did not think the alleged victim was being truthful. In response to this objection, the government contends the victim called 911 and reported she was robbed at gunpoint, she accurately described the suspects, knew one of the suspects to be the defendant, and positively identified one of the weapons found in the defendant's house as well as the cell phone stolen from her and recovered inside the home.

During the execution of the search warrant, the police recovered a black iPhone 8, which matched the description of what the victim had lost during the robbery. It was located in the crawlspace along with the three firearms. However, at the hearing Agent Bennett testified that law enforcement never turned on the phone to corroborate whether or not the phone was hers and it was never confirmed whether it was in fact the victim's phone. The government conceded that the iPhone was never fully established to belong to the victim. Of the three firearms recovered from the house, the black Taurus semi-automatic handgun with an extended magazine fit the victim's description of the firearm used in the robbery. However, the police reports and hearing

testimony indicate there were a few discrepancies with the victim's story, cutting against her credibility. For example, in one version of events, after the robbery she asked someone to use their phone to call her sister to come pick her up. In a later statement to the police, she stated that she called her brother and he told her the same people robbed him the night before and that he showed her photographs of the individuals. Officer Bennet testified that this discrepancy stood out to him because he was curious as to how she contacted her brother after the robbery and how she was able to view pictures that were in the possession of her brother. Officer Comeau, an investigating officer who interviewed the robbery victim, testified that he did not believe her and the information she gave because she was not consistent or firm in her interview and her entire statement was "a little suspect." Ultimately, he testified that he did not believe the robbery ever happened. While this is the Court's decision to make, it gives this officer's opinion great weight given his experience in law enforcement and his ability to discern the credibility of those involved.

For those reasons, the Court concludes that the government has failed to reach its burden establishing that Mr. Rios was involved in the robbery as described in the PSR, and therefore the Court sustains the objection and declines to impose the four-level enhancement under 2K2.1(b)(6)(B).

### E.  Criminal History

Mr. Rios objects to the assignment of two points for his conviction for non-support in St. Joseph County Cause 71J01-0707-JP-000836 (PSR ¶¶ 60–61). Mr. Rios argues that although he was sentenced for "non-support," he was incarcerated on a previous conviction at that time and was unable to answer the contempt of court. The government and probation explain that, as indicated in the PSR, the defendant was arrested on his federal charge on June 21, 2013. As for

St. Joseph County Cause 71J01-0707-JP-000836, he was ordered incarcerated on dates before his federal arrest: July 6, 2009; February 8, 2012; and May 24, 2013. At the bifurcated hearing, defense counsel clarified that Mr. Rios does not challenge the underlying conviction or that his criminal history was accurately calculated under the guidelines, but rather provides the circumstances of the conviction for purposes of consideration under the § 3553(a) factors. With this clarification, the Court does not need to rule on this objection as it does not impact the advisory Guidelines' range and instead will consider Mr. Rios' explanation under the § 3553(a) factors.

In conclusion, the Court **SUSTAINS** Mr. Rios' objection that his prior conviction for criminal recklessness does not qualify as a crime of violence under the Guidelines, **OVERRULES** Mr. Rios' objection to the two-level enhancement pursuant to § 2K2.1(b)(1)(A) for possessing three firearms, and **SUSTAINS** Mr. Rios' objection as to the four-level enhancement pursuant to § 2K2.1(b)(6)(B) regarding the alleged robbery. The Court adopts the remaining paragraphs of the Presentence Report, subject to certain modifications and limitations as noted in this Order. The Court finds that Mr. Rios' total offense level under the Guidelines is 22. Reducing that by three levels for acceptance of responsibility yields an adjusted offense level of 19. Along with his criminal history category of V, that produces an advisory sentencing range of 57-71 months of imprisonment. Having made these finding, the Court will set a date to conclude the sentencing hearing, at which time it will consider the factors under § 3553(a) and impose a sentence.

SO ORDERED.

ENTERED: August 16, 2021

_____ /s/ JON E. DEGUILIO _____
Chief Judge
United States District Court

9